**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**ROBERT JACKSON JETT,**

      **Petitioner,**

**v.**                               **Case No. 3:20cv5432-MCR/MAF**

**BARTLETT, Acting Warden,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2241 PETITION

On or about April 28, 2020, Petitioner Robert Jackson Jett, a federal prisoner proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.   ECF No. 1.   On November 5, 2020, Respondent filed a response to the petition, with exhibits.   ECF No. 8.   Petitioner has filed a reply.   ECF No. 9.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).   After careful consideration, the undersigned concludes Petitioner has not demonstrated entitlement to relief under section 2241 and this petition should be denied.

## Background

Petitioner Robert Jackson Jett, while an inmate at the Marianna Federal Institution Satellite Camp in Marianna, Florida, filed this § 2241 petition challenging the execution of his sentence.    ECF No. 1.    The website for the Federal Bureau of Prisons (BOP) indicates Jett's current projected release date is May 13, 2022.    *See* www.bop.gov/inmateloc/.

According to documents provided by Respondent, on February 13, 2008, local law enforcement officers in Coweta County, Georgia, in case number 2008-R-465, arrested Jett for trafficking in methamphetamine and possession of morphine (a Schedule II controlled substance); he was also charged with a seat belt violation and no proof of insurance.    *See* ECF No. 8-1 (Respondent's Exhibit:    Sentence Computation Summary prepared October 7, 2020, by Edith Rohmer, Management Analyst, BOP Designation & Sentence Computation Center); ECF No. 8-2 at 2-3 (Attach. 1 to Respondent's Exhibit).    On June 17, 2008, local law enforcement officers in Bartow County, Georgia, also arrested Jett for trafficking methamphetamine and possession of a Schedule II substance in case number 2008-R-465, as well as violation of his probation in case number 99cr716.    ECF No. 8-1 at 1; ECF No. 8-2 at 12-13 (Attach. 2) and 14-25 (Attach. 3).    On September

2, 2008, the Georgia state court revoked Jett's probation in case number 99cr716 and sentenced him to serve the remaining balance of his original sentence.   ECF No. 8-1 at 1; ECF No. 8-2 at 12-13 (Attach. 2) and 14-25 (Attach. 3).   The original offenses involved in that state case, Bartow County case number 99cr716, were theft by receiving stolen motor vehicle parts, possession of an item with removed ID, and theft by deception.   *See* ECF No. 8-2 at 49-50 (Attach. 9).   "Prior custody credit was applied to this sentence, starting June 17, 2008," and Jett completed this sentence on April 17, 2010.   ECF No. 8-1 at 1-2; *see* ECF No. 8-2 at 12-13 (Attach. 2) and 14-25 (Attach. 3).   *See also* ECF No. 8-2 at 49-50 (Attach. 9).

In the meantime, on September 15, 2008, U.S. Marshals temporarily removed, or "borrowed," Jett from state custody on a federal writ of habeas corpus ad prosequendum for his appearance in a federal court case, number 4:08cr039-01-RLV, before Judge Robert L. Vining, Jr., in the United States District Court for the Northern District of Georgia.   ECF No. 8-1 at 2; ECF No. 8-2 at 26-27 (Attach. 4), 28-32 (Attach. 5).   Jett pled guilty to two counts in that case, and on February 26, 2009, Judge Vining sentenced him to a total of 190 months in prison for the offenses of possession with intent to distribute at least 50 grams of methamphetamine, in violation of 21 U.S.C.

§§ 841(a)(1) and (b)(1)(B)(viii), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g).    ECF No. 8-2 at 28-32 (Attach. 5); *see* ECF No. 8-1 at 2.    On March 11, 2009, the U.S. Marshals returned Jett to Georgia state custody to complete his state sentence from Bartow County case number 99cr716.    ECF No. 8-2 at 33-35 (Attach. 6); *see* ECF No. 8-1 at 2.    The federal court's judgment was filed as a detainer.    *See* ECF No. 8-2 at 49 (Attach. 9).

A few days later, on March 18, 2009, while Jett was serving the Bartow County sentence, the Georgia state court sentenced him to fifteen (15) years in prison in Coweta County case number 2008-R-465, for the charges of trafficking in methamphetamine and possession of morphine (Schedule II substance), following his entry of a guilty plea.    ECF No. 8-1 at 2; ECF No. 8-2 at 2-11 (Attach. 1); ECF No. 8-2 at 49 (Attach. 9).    The state court gave him credit on the sentence from February 13, 2008, through February 14, 2008, and March 1, 2009, through March 18, 2009.    ECF No. 8-1 at 2; ECF No. 8-2 at 12-13 (Attach. 2).

On April 17, 2010, Jett was paroled from his state sentence in case number 99cr716, from Bartow County, Georgia.    ECF No. 8-1 at 3; ECF No. 8-2 at 50 (Attach. 9).    On December 3, 2014, Jett completed his state prison

sentence in case number 2008-R-465, from Coweta County, Georgia, and he was released to exclusive federal custody.   ECF No. 8-1 at 2; ECF No. 8-2 at (Attach. 7), 50 (Attach. 9).

By letter on August 3, 2018, the BOP Designation and Sentence Computation Center contacted the federal sentencing court, Judge Harold L. Murphy, to obtain an opinion regarding retroactive designation pursuant to 18 U.S.C. § 3621(b), as Jett had requested that his federal sentence be served concurrently with his state sentence.   ECF No. 8-2 at 49-50; *see* ECF No. 8-1 at 3.   In response, by order dated on August 14, 2018, Judge Murphy directed that Jett's federal sentence "run concurrently with his state sentence imposed March 18, 2009."   ECF No. 8-2 at 47-48 (Attach. 9); *see* ECF No. 8-1 at 3.

By order on January 31, 2019, pursuant to 18 U.S.C. § 3582(c)(2), the federal sentencing court, Judge Murphy, reduced Jett's prison sentence from 190 months to 170 months.   ECF No. 8-1 at 2; ECF No. 8-2 at 45 (Attach. 8).   The court further indicated that "[e]xcept as otherwise provided, all provisions of the judgment dated February 26, 2009 shall remain in effect." ECF No. 8-2 at 45 (Attach. 8).

As indicated above, Jett initiated this § 2241 proceeding in this Court

on or about April 28, 2020.  ECF No. 1.   Jett indicates he challenges the

calculation of his sentence, *id*. at 1, and raises four grounds:

(1) "The judge said all right to my lawyer who asked for the extent of my sentence we ask for credit of time served" and "then proceeded to ask the government for any objection if they had one," and "[t]he government replied no objection," *id*. at 6;

(2) "My PSI states on page 16 that I should receive credit," *id*.;

(3) "My state judge gave me 15 years to be served concurrent with federal case now serving on 3-18-09," *id*.; and

(4) "I actively pursued a nunc-pro-tunc or a retroactive designation" and "I was given an order that granted me a retroactive designation," *id*. at 7.

As relief, Jett requests that his federal sentence be directed to have begun

the day he "orally received sentence" as he "thought the matter was settled

when [he] got sentenced," and he wants the "sentence computation to reflect

a start date of 02-26-09."   *Id*.

On November 5, 2020, Respondent filed a response to Jett's § 2241

petition, with an exhibit and attachments.   ECF Nos. 8, 8-1, 8-2.

Respondent indicates Jett has exhausted his administrative remedies.   ECF

No. 8 at 6.   Respondent asserts the BOP has properly computed Jett's

federal sentence and did not abuse its discretion in determining Jett's "time

credits to begin no earlier than the imposition of his federal sentence; here,

June 25, 2012." *Id.* In particular, Respondent explains the BOP correctly determined that Jett's concurrent federal sentence commenced on June 25, 2012, the date the federal court imposed that sentence. *Id.* at 7. Respondent further explains that, pursuant to BOP Program Statement 5880.28, a prisoner who is in non-federal custody at the time of sentencing may begin service of a federal sentence prior to arriving at a federal facility if the non-federal facility is designated in accordance with the Program Statement on Designation of State Institution for Service of Federal Sentence, and this type of designation is usually made only on the recommendation of the sentencing court, as was done in this case. *Id.* at 7-8. Respondent emphasizes the BOP acted in accordance with relevant Program Statements, it did not abuse its discretion in computing Jett's sentence, and its computation is entitled to deference. *Id.* at 8-9.

Jett has filed a reply. ECF No. 9. He asserts "[t]he government did not even mention that fact that on 2-26-09 which is the day [he] was federally sentenced that Judge Vining stated for [him] to be imprisoned for a term of 130 months on count one and 60 months on count two to be served consecutively," and the judge then asked if there were any objections, and Jett's lawyer "said no sir[,] [t]o the extent we ask for credit of time served."

*Id.* at 1.   Jett indicates the judge "replied All Right" and "the government replied No. Objection."   *Id.*   Jett indicates "[t]he sentence was orally spoken and concluded right after that" and he "was under the impression that the issue was resolved."   *Id.*   "Upon [his] intake at the BOP," however, he says his "sentence computation did not reflect this" and, accordingly, he began pursuing his administrative remedies.   *Id.*   He indicates that, when he sought nunc pro tunc designation, the sentencing judge was contacted but "they did not inform the newly assigned Judge Murphy that [his] federal time could start on 2-26-09"; rather, "[t]he letter stated that [his] time would start on 4-17-10 without stating that [his] time was and or could be ran concurrent with [his] state probation revocation."   *Id.*   Jett asserts the federal sentencing court, not the BOP, determines whether a sentence runs concurrent or consecutive.   *Id.*   He indicates that, on August 14, 2018, "the court issued its own motion stating that [his] sentence in this action is to run concurrently with his state sentence imposed on 3-18-09."   *Id.*   He asserts that, "to the extent that further clarification is needed regarding [his] probation revocation the sentence was given a clerical clarification on 9-16-20" and "[t]he court clarified the probation revocation sentence entered on 9-2-08 as to expressly run CONCURRENT with the sentence pending" from the

Georgia federal court.   *Id.*   Jett argues the government is making a "clerical mistake" in pointing to June 25, 2012, as the date of imposition of the federal sentence.   *Id.* at 2.   He argues, "BOP should determine that [his] sentence should commence on Feb. 26, 2009 the date [his] sentence was imposed in the United States District Court."   *Id.*

## Analysis

The Judiciary Act of 1789 granted federal courts the power to issue the writ of habeas corpus.   *See* United States v. Hayman, 342 U.S. 205 (1952). The habeas remedy is now codified in 28 U.S.C. § 2241, subsection (c)(3) of which provides that the writ of habeas corpus shall not extend to a prisoner unless the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States."   As noted in Hayman, prisoners must bring habeas corpus applications in the district of confinement.   342 U.S. at 213. Because courts with federal prisons in their jurisdictional boundaries became inundated with habeas petitions, and because the materials, witnesses, and other evidence which had a significant bearing on the determination of the legality of a sentence were generally located in the district where sentence was imposed rather than where the prisoner was confined, in 1948 Congress enacted section 2255 of Title 28.   *See id.* at 212-14, 218.

The language of section 2255 suggests, and the Eleventh Circuit has expressly concluded, that this statute channels challenges to the legality of the imposition of a sentence, while leaving section 2241 available to challenge the continuation or execution of an initially valid confinement. *See* McCarthan, 851 F.3d at 1081; Antonelli v. Warden, U.S.P. Atlanta, 542 F.3d 1348, 1351-52 (11th Cir. 2008); United States v. Jordan, 915 F.2d 622, 629 (11th Cir. 1990) (explaining § 2255 is primary method of collateral attack on federally imposed sentence).    Thus, section 2241 provides an avenue for challenges to matters such as the administration of sentences or parole, prison disciplinary actions, prison transfers, and certain types of detention. *See* Antonelli, 542 F.3d at 1352 (petition challenging decision of federal Parole Commission is properly brought pursuant to § 2241); Thomas v. Crosby, 371 F.3d 782, 810 (11th Cir. 2004) (petition challenging pre-trial detention is properly brought pursuant to § 2241); Bishop v. Reno, 210 F.3d 1295, 1304 n.14 (11th Cir. 2000) (petition challenging Bureau of Prisons' administration of service credits, including calculation, awarding, and withholding, involves execution rather than imposition of sentence, and thus is matter for habeas corpus).

Jett's § 2241 petition challenges the execution of his sentence,

specifically the BOP's calculation of his sentence.   ECF No. 1.   After a federal court imposes a sentence, the U.S. Attorney General, acting through the BOP, administers the federal defendant's sentence and initially has the exclusive authority to determine when the federal sentence commences and compute sentence credit awards after sentencing.   18 U.S.C. §§ 3585(a), 3621(a)-(b); United States v. Wilson, 503 U.S. 329, 335 (1992); Rodriguez v. Lamar, 60 F.3d 745, 747 (11th Cir. 1995).

A federal inmate challenging the BOP's sentence calculation must first exhaust administrative remedies with the BOP, which Respondent indicates Jett has done, ECF No. 8 at 6, and then the district court may review the constitutionality of the BOP's decision regarding computation of the federal sentence and statutory construction.   *See* Rodriguez, 60 F.3d at 747.   "[I]f congressional purpose is clear, then interpreting courts and administrative agencies 'must give effect to the unambiguously expressed intent of Congress.'"   *Id.* (quoting Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984)).   If the statutory provision is silent or ambiguous, the court must defer to the agency's reasonable interpretation unless the interpretation is "'arbitrary, capricious, or manifestly contrary to the statute.'"   *Id.* (quoting Chevron, 467 U.S. at 844).

Petitioner Jett is not entitled to relief in this case.   As detailed above, Jett asserts his federal sentence started on February 26, 2009, the day the Georgia federal court sentenced him.   As explained above, at the time of his federal sentencing, Jett was serving a state sentence from Bartow County, Georgia, based on the September 2, 2008, revocation of his probation in case number 99-CR-716.   The federal judgment and sentence was silent regarding how it would run in relation to any other prison term(s).   ECF No. 8-2 at 28-32 (Attach. 5); ECF No. 8-1 at 3.   After his federal sentencing, the Georgia state court in Coweta County sentenced Jett on March 18, 2009, to fifteen years in prison in case number 2008-R-465.   On December 3, 2014, Jett completed his Georgia prison term and was released to the federal detainer to begin serving his federal sentence.   ECF No. 8-1 at 2; ECF No. 8-2 at 49-50.

When Jett requested nunc pro tunc designation of the state institution for service of his federal sentence, the BOP Designation and Sentence Computation Center contacted the federal sentencing court.   ECF No. 8-2 at 49-50 (Attach. 9).   The sentencing court responded, by order on August 14, 2018, finding retroactive designation appropriate under 18 U.S.C. § 3621(b) and ordering that Jett's federal sentence "run concurrently with his

state sentence imposed March 18, 2009."    *Id.* at 47-48.

The state sentence imposed March 18, 2009, was in Georgia state case 2008-R-465, from Coweta County.   Jett began serving that sentence on April 17, 2010, when he was paroled from his other Georgia state sentence, 99-CR-716, from Bartow County.    ECF No. 8-1 at 3. Accordingly, as explained in the exhibit attached to Respondent's answer, the BOP began Jett's sentence computation on April 17, 2010:   "The designation to the state allowed [Jett's] federal sentence to commence on the earliest date allowed.   There is no prior custody credit."   *Id.*

The BOP's determination is consistent with federal provisions.   A federal sentence "commences on the date the defendant is received in custody [at] the official detention facility" designated by the BOP.   18 U.S.C. § 3585(a); *see* 18 U.S.C. § 3568 ("The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence.").   When a federal defendant is already serving a state sentence, as was the case with Jett, the BOP has the practical power to "make the federal sentence run concurrently by designating the state prison as a place of federal confinement, so that the clock would start to tick

on the federal sentence." <u>Romandine v. United States</u>, 206 F.3d 731, 738 (7th Cir.2000).

In addition, as referenced in the exhibit attached to Respondent's answer, ECF No. 8-1 at 3, the BOP promulgated Program Statement 5160.05, entitled "Designation of State Institution for Service of Federal Sentence."   This Program Statement authorizes the BOP regional directors to act on an inmate's request for nunc pro tunc designation of a state institution as the place to serve the inmate's federal sentence.   Paragraph 8 thereof provides that such designation "will be made only when it is consistent with the intent of the federal sentencing court or with the goals of the criminal justice system."   Similarly, the Program Statement also provides, in paragraph 9(b), that "[n]ormally, designating a non-federal institution for the inmate is done when it is consistent with the federal sentencing court's intent."

Although Jett asserts his federal sentence computation should begin February 26, 2009, when his federal sentence was imposed, at that time he was still serving his Georgia state sentence from Bartow County and his state sentence from Coweta County had not yet been imposed.   As referenced in the exhibit attached to Respondent's answer, "[f]ederal judges have the

authority to order a federal term of imprisonment to run consecutively to or concurrently with any other sentence" and "[w]hen there is a previously imposed sentence (federal or non-federal) in existence at the time of federal sentencing, and the federal judge does not state whether multiple terms of imprisonment are to run consecutively to or concurrently with one another, the sentences run consecutively (see 18 U.S.C. § 3584)."   ECF No. 8-1 at 3.   Here, when the federal court imposed Jett's sentence on February 26, 2009, Jett was serving a previously imposed non-federal sentence from Bartow County, Georgia.   The federal judge did not state whether the federal sentence was to run consecutive to, or concurrent with, that Bartow County sentence.   Accordingly, pursuant to 18 U.S.C. § 3584(a), Jett's federal sentence ran consecutive to the Bartow County sentence.

Because Jett's federal judgment was silent as to how his sentence should run in relation to any other sentence, in accordance with Program Statement 5160.05, the BOP provided the federal sentencing court with an opportunity to state its position regarding his nunc pro tunc request.   *See* ECF No. 8-2 at 49-50 (Attach. 9); BOP Program Statement 5160.05(9)(b)(4)(c) (explaining that when prisoner requests pre-sentence credit toward federal sentence for time spent in state custody, BOP gives

sentencing court opportunity state its position on such request).   In response, the federal court specifically stated Jett's federal sentence "is to run concurrently with his state sentence imposed on March 18, 2009," that is, the Coweta County sentence imposed after the federal sentence.   ECF No. 8-2 at 47-48 (Attach. 9).   Jett began serving that state sentence on April 17, 2010, and this is the date the BOP started computing his concurrent federal sentence.   ECF No. 8-1 at 3.

In his reply, ECF No. 9 at 2, Jett points out that, in its response, the Government states his "concurrent federal sentence commenced on June 25, 2012," ECF No. 8 at 7.   *See* ECF No. 8 at 6-7.   Nothing in the Government's response, exhibit, or attachments appears to support this as the start date for Jett's federal sentence.   *See* ECF Nos, 8, 8-1, 8-2. Accordingly, as Jett concludes, it seems the Government's use of this date in its response is a clerical mistake.   *See* ECF No. 9 at 2.

In addition, in his reply, Jett emphasizes that, at his federal sentencing, Judge Vining asked if there were any objections to his sentence and, in response, defense counsel responded, "No, sir.   To the extent we ask for credit of time served," and Judge Vining then stated, "All right," and asked the Government for any objections, to which the Government's lawyer

answered, "No, objection."   ECF No. 9 at 1-2, 6.   The federal court did not

direct that his sentence run concurrently with the state sentence he was

serving at that point, from Bartow County; rather, as explained above,

because the federal judgment was silent on this point, the federal sentence

was deemed consecutive to that state sentence.   As explained in the BOP

sentence computation summary, the BOP began Jett's federal sentence on

April 17, 2010, the earliest date allowed (when Jett began serving the

concurrent Coweta County sentence), and there was no applicable prior

custody credit.   ECF No. 8-1 at 3; *see* 18 U.S.C. § 3585(a) (concerning

"commencement of sentence" and providing that "[a] sentence to a term of

imprisonment commences on the date the defendant is received in custody

awaiting transportation to, or arrives voluntarily to commence service of

sentence at, the official detention facility at which the sentence is to be

served."), (b) (concerning "credit of prior custody" and providing that "[a]

defendant shall be given credit toward the service of a term of imprisonment

for any time he has spent in official detention prior to the date the sentence

commences . . . (1) as a result of the offense for which the sentence was

imposed; or (2) as a result of any other charge for which the defendant was

arrested after the commission of the offense for which the sentence was

imposed; that has not been credited against another sentence.").

Jett also points out that, on September 16, 2020, his "probation revocation" sentence "was given a clerical clarification," whereby "[t]he court clarified the probation revocation sentence entered on 9-2-08 as to expressly run CONCURRENT with the sentence pending" in his federal court case. ECF No. 9 at 1.   He has included the order, as Attachment 6 to his reply, as well as the letter his attorney wrote to the BOP, as Attachment 7, regarding that case and the state court's intent that the sentence run concurrent "with the possible sentence in the then-indicted federal case."   *Id.* at 15 (order), 16-17 (letter).   The referenced order was entered September 16, 2020, by the Bartow County court in case number 99cr716 and provides, in its entirety:

> Having been presented with proper motion and argument of counsel on September 15, 2020, this Court hereby enters this ORDER clarifying the sentence in the above-captioned probation revocation sentence, entered on September 2, 2008, as to expressly run CONCURRENT with the possible sentence in the then-indicted Federal Case 4:08cr039 from the United States District Court for the Northern District of Georgia against the same defendant.

*Id.* at 15.   As discussed above, this is the state sentence based on a revocation of probation that Jett was serving when the federal court sentenced him.   It appears that, according to this order, the state court intended this sentence and his federal sentence run concurrently.   As

explained above, however, the federal judgment was silent in that regard; thus, the federal sentence runs consecutively. *See* 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.").

Indeed, as also explained above, when Jett requested that his federal sentence be served concurrently with this state sentence(s), the BOP inquired of the sentencing court regarding the court's position on the request and included information about both of the Georgia state court sentences. ECF No. 8-2 at 49-50. In response, the federal sentencing court ordered that Jett's federal sentence run concurrently with only the state sentence imposed March 18, 2009, in the Coweta County case. *Id.* at 47-48. The authority to order that a federal sentence run concurrent with or consecutive to any other sentence rests solely with the federal sentencing court. *See* Setser v. United States, 566 U.S. 231, 241 (2012) (explaining principles of federalism applicable in concurrent-vs.-consecutive sentencing decisions: "In our American system of dual sovereignty, each sovereign – whether the Federal Government or a State – is responsible for 'the administration of [its own] criminal justice syste[m].' If a prisoner like Setser starts in state custody, serves his state sentence, and then moves to federal custody, it will

always be the Federal Government – whether the district court or the Bureau of Prisons – that decides whether he will receive credit for the time served in state custody.    And if he serves his federal sentence first, the State will decide whether to give him credit against his state sentences without being bound by what the district court or the Bureau said on the matter." (emphasis added and citation omitted) ); United States v. Andrews, 330 F.3d 1305, 1307 n.1 (11th Cir. 2003) ("[W]e conclude only that the federal court may control the federal sentence and whether a defendant will receive federal credit for the time served on his state sentence. We fully recognize that the Supremacy Clause does not permit federal courts to control how a state court sentences a defendant.    As stated in [United States v.] Ballard, [6 F.3d 1502, 1509 (11th Cir. 1993),] '[w]hich court sentences first is irrelevant.    The tenet for dual sovereignty purposes is that each sovereign must respect not only the sentencing authority of the other, but also the sentence."); Finch v. Vaughn, 67 F.3d 909, 915 (11th Cir. 1995) ("We specifically have held that a federal court is authorized to impose a federal sentence consecutive to a state sentence, although the state court explicitly made its sentence concurrent with the federal sentence." (citing United States v. Adair, 826 F.2d 1040, 1041 (11th Cir. 1987))).

Based on the foregoing, in using April 17, 2010, as the start of Jett's federal sentence computation, the BOP acted in accordance with the relevant Program Statement, federal law, and the federal sentencing court's directives.   Nothing indicates the BOP abused its discretion.

## Conclusion

For the reasons set forth above, it is **RECOMMENDED** that the petition for writ of habeas corpus filed under 28 U.S.C. § 2241 (ECF No. 1) be **DENIED.**

**IN CHAMBERS** at Tallahassee, Florida, on December 4, 2020.

**S/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   See 11th Cir. R. 3-1; 28 U.S.C. § 636.**